Filed 12/30/24  P. v. Sanudo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>MICHAEL ANGELO SANUDO,<br><br>    Defendant and Appellant. | C099600<br><br>(Super. Ct. No. CRF07283202) |

Defendant Michael Angelo Sanudo appeals the trial court's denial of his petition for resentencing under Penal Code section 1172.6[1] following an evidentiary hearing after which the court found that he could still be convicted of first degree murder.  On appeal,

---

[1]  Undesignated statutory references are to the Penal Code.

Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  We refer to section 1172.6 throughout this opinion.

defendant argues insufficient evidence supports the court's finding that he acted with reckless indifference to human life. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In their respondent's brief, the People request we take judicial notice of the record from defendant's prior appeal in *People v. Ouellette* (Aug. 10, 2012, C065374) (nonpub. opn.). We treat this request as a motion to incorporate the record by reference and, as such, grant it.

In 2010, defendant and codefendant Aaron Richard Ouellette were charged with the first degree murder of Willie Dean Roberts, Jr. (§ 187; count 1), second degree robbery (§ 211; count 2), participation in a street gang (§ 186.22, subd. (a); count 3), and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1); count 4). As to count 1, it was alleged the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)(A)), the murder was intentional and involved torture (§ 190.2, subd. (a)(18)), defendant and Ouellette intentionally killed Roberts while active participants in a criminal street gang (§ 190.2, subd. (a)(22)), and defendant and Ouellette committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)). As to counts 2 and 4, it was further alleged the two men personally inflicted great bodily injury on someone other than an accomplice (§ 12022.7, subd. (a)) and that they committed the crime for the benefit of a criminal street gang (§ 186.22, subd. (b)). It was further alleged they each had one prior prison term. (Former § 667.5, subd. (b).)

As relevant here, a jury found defendant guilty of first degree murder (count 1), second degree robbery (count 2), active participation in a criminal street gang (count 3), and misdemeanor battery (§ 240, count 4). The jury found true that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)) as well as the prior prison term enhancement (former § 667.5, subd. (b)).

2

In June 2010, the trial court sentenced defendant to state prison for an aggregate term of one year (for the enhancement) plus life without the possibility of parole. This court affirmed the judgment on appeal. (*Ouellette, supra*, C065374.)

*Petition for Resentencing*

In September 2022, defendant filed a petition for resentencing. Counsel was appointed, and the parties filed briefs. In March 2023, based on defendant's petition, the parties' briefs, and the record of conviction, the trial court found defendant had made a prima facie showing of eligibility, as he was not the actual killer and could have been convicted under the felony murder rule or as an aider and abettor. The court issued an order to show cause.

During the September 2023 evidentiary hearing, prior to hearing argument, the trial court noted it had reviewed the additional briefs filed by the parties. The court admitted into evidence a full reporter's transcript from the jury trial, the jury instructions, the jury verdicts, and the clerk's minutes regarding the jury verdicts. The court also admitted certain trial exhibits not in our appellate record. No new evidence was introduced.

The trial court reiterated that it was the prosecution's burden to prove beyond a reasonable doubt that defendant remained guilty of murder under the current versions of section 188 and 189. The court did not find dispositive that the jury found true the special circumstance of murder committed during a robbery because it reached verdicts before our Supreme Court clarified the meanings of major participant and reckless indifference to human life. (See *People v. Banks* (2015) 61 Cal.4th 788, 803 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522, 618-623 (*Clark*).)

The prosecution argued defendant was guilty of murder either because (1) he acted with the intent to kill by aiding and abetting the killer in the commission of the murder or (2) he was a major participant in the underlying robbery and acted with reckless disregard and indifference to human life.

3

The evidence from defendant's trial set forth the following: At around 1:00 a.m. on September 29, 2007, Officer Kristopher Gibson responded to a dispatch call for an alleged assault involving a vehicle. When he arrived at the scene, he noticed a large pool of blood in the road, along with a bicycle and some "cards." Still in his car, the officer followed bloody drag marks for about a minute and then found a blue pickup truck with the murder victim, Roberts ("the victim" if unidentified by name or "Roberts" if identified) dead under a front tire, trapped in the wheel well. A second officer saw a blood trail on the road starting near a discarded wallet, along with skid marks made by an accelerating vehicle. Roberts had been dragged for 730 feet.

Earlier that morning, Riki Clark and her friend Erica Hill had been drinking at Clark's apartment and went outside to smoke cigarettes. Clark heard an argument and saw three people fighting. She went inside briefly; when she returned, the victim was motionless on the asphalt in the alley. The other two people repeatedly kicked the victim and took things out of his pockets. The two then got into a pickup truck parked nearby and backed up, with the rear tires running over the victim. The truck drove forward and then reversed again, running over the victim twice more. The truck then drove forward, dragging the victim's body underneath. Clark went inside to call the police. Clark testified she was "very intoxicated" the night of the incident, but she did not believe her perception of the incident was affected.

According to Hill, soon after she and Clark arrived outside, the victim rode by on his bicycle. Hill then heard a commotion and saw two men approach the victim. The men (two distinct voices) were calling the victim a racial epithet, asking what he had for them, and telling him to give it to them. The man who later drove the pickup truck (driver) then pushed the victim onto the ground and kicked him in the head multiple times. The other man (passenger) was also kicking the victim in the chest. The driver then rifled through the victim's pockets, with the passenger standing very close by. The driver began stuffing things into his own pocket, and the passenger resumed kicking the

4

victim. Hill heard the victim moan; at some point he did not fight back or move again. Hill saw the two men get into the truck and back over the victim, causing him to become stuck under the right front tire. The passenger then opened his door and looked toward the front tire, then kicked the victim in the head about four times. The truck then drove back and forth two to three more times, and then forward slowly with the victim still stuck. After about two minutes, the truck stopped and the driver got out. When Hill caught up to the stopped truck, the two men were gone.

Hill testified that she drank about three shots containing alcohol in the two hours prior to the incident. She claimed her ability to perceive the incident was not affected. She was able to get a good look at the two men's faces during the incident. She was interviewed by the police a few hours after the incident, but she did not say at the time that she had seen the passenger open his door and kick the victim. She also failed to say she had seen the victim getting knocked off his bicycle. Hill explained she was upset that day, but she definitely had seen both of these things happen.

At a field show-up at around 6:00 a.m. on the day of the incident, Hill identified defendant as the passenger. She did not recognize Ouellette.

On the day of the incident, Naqueita Cox, Latoya Shaw, and Latoya Perico were drinking beer on an apartment balcony overlooking the alley when they heard screeching tires. A pickup truck with a driver and a passenger drove by slowly down the alley, maybe five or 10 miles per hour. All three women saw someone stuck under the passenger side of the truck. They saw the truck stop briefly while at least one person got out, looked under the truck, and got back inside; the truck then kept moving forward. Cox saw one person get out (she was unsure if it was the passenger or driver); Shaw and Perico saw two people get out and check under the truck. Shaw also said she watched a woman (Hill) chase the truck and yell out for someone to call the police. Shaw and Cox ran toward the truck, which was now parked and empty, and saw the victim stuck under

5

the truck. According to Shaw, the woman she had seen chasing the truck was trying to push the truck off the victim.

Christina Dearden testified that on the day of the incident, she was in her apartment watching a movie when she heard screeching tires. She looked out her window and saw a pickup truck pull up and stop. She saw two men get out of the truck, look underneath, and then leave on foot. She approached the truck and saw the victim stuck underneath. During a field show-up at around 6:00 a.m. on the morning of the incident, Dearden identified Ouellette as the driver. When an officer spoke to Dearden the next day, she said she was only 60 percent positive that the man she identified was the driver.

Forensic pathologist Dr. Gregory Reiber performed an autopsy on Roberts and determined he died from traumatic asphyxia. Dr. Reiber estimated it took Roberts from five to six minutes to die. His injuries were consistent with being dragged underneath a vehicle. In Dr. Reiber's opinion, the injuries did not indicate Roberts had been run over by a vehicle.

Accident reconstruction expert Mark Shattuck opined that, from a driver's perspective, dragging a body was a comparable sensation to having a flat tire. He testified that the marks left on the alleyway were acceleration skid marks and could have been caused by a vehicle accelerating from a complete stop. In Shattuck's opinion, when the specific type of pickup truck involved in the incident here runs over a person, "they're going to get lodged pretty much every time." He expected the driver would feel something if the truck ran over a person. Shattuck opined that several hundred feet was a "long way" for a person to continue driving after running over and then dragging a pedestrian. However, under certain circumstances, it might be harder for a driver to notice running over or dragging a person, such as if the person were behind the vehicle, especially if the tires did not actually run over the person.

Ouellette testified that prior to the murder he had borrowed the pickup truck and had gone to hang out with a friend and drink beer, with defendant later joining them. At the time, Ouellette's dominant hand was broken and in a cast. At some point, he and defendant left in the truck to go to the house of defendant's mother. Ouellette saw the victim riding a bicycle and asked him for a cigarette; the victim was "wobbling," so Ouellette put his hands on the bicycle handlebars. The victim "took a swing," and the two began fighting, although Ouellette was hesitant to hit him because of his hand injury. Defendant came over and tried to break things up, causing the victim to fall to the ground. Ouellette noticed people running toward them, so the two then decided to get into the truck to leave.

With all the windows up and the radio blaring, Ouellette backed up and looked behind to see how close the approaching people were. He tried to drive forward, but the tires started screeching, and the engine revved. Thinking the tires were spinning because the ground was wet from recent rain, he stopped. He then tried again, but the truck was difficult to control and seemed to be sliding. Ouellette thought he had a flat tire and was afraid he was feeling the effects of the alcohol. Ouellette was on parole, and he feared going back to jail for drinking and driving. He pulled over, parked the truck, got out, and ran.

Ouellette denied trying to take anything from the victim and claimed neither he nor defendant had ever kicked or stomped on the victim. He never wanted to hurt the victim, and he did not try to run him over. He never got out of the pickup truck until he fled.

*Trial Court's Ruling on Defendant's Petition*

After considering the evidence we have set forth above, the trial court denied defendant's petition. The court noted the evidence established defendant was not the actual killer, as the cause of death was asphyxiation as a result of being trapped and dragged by the truck driven by Ouellette. As such, the issue was whether defendant was

7

a major participant and acted with reckless indifference to human life, as explained in *Banks* and *Clark*.

Reviewing the *Banks* and *Clark* factors, the trial court turned first to whether defendant was a major participant; the court noted that the evidence indicated the crime was likely one of opportunity, defendant had not supplied or used the lethal weapon, and there was no evidence defendant knew if Ouellette had a violent history. But defendant was "clearly" in a position to facilitate or prevent Roberts's death. Defendant had participated in the group assault that rendered Roberts unable to defend himself, and then got into the pickup truck even though Roberts was still lying in the street in a spot where the truck would necessarily drive over Roberts when Ouellette drove away. Defendant could have easily prevented the death by moving Roberts's body out of the truck's path but instead remained inside as the truck ran over Roberts and then traveled 730 feet. After Roberts became stuck under the truck, instead of offering aid or assistance, defendant kicked Roberts in an effort to dislodge him from the truck's wheel well so defendant and Ouellette could escape. When unsuccessful, defendant decided to flee the scene to avoid getting caught. And, according to the pathologist, "[i]t took some time" for Roberts to die after he was run over and dragged by the truck.

Turning next to whether defendant acted with reckless indifference, the trial court explained that--given that the lethal weapon was a pickup truck--whether defendant knew a lethal weapon would be present during the felony or was likely to be used, and the number of weapons involved, were inapplicable considerations. The court noted the evidence was unclear as to the crime's duration, or whether defendant was aware of Ouellette's likelihood to kill. However, defendant knew a lethal weapon had been used, because he was in the truck when it ran over Roberts and he then opened the truck door, realized Roberts was lodged in the wheel well, and kicked Roberts. Further, defendant was physically very close to Roberts when the killing occurred, and he had an opportunity to stop the killing by moving or helping Roberts, but he chose to do neither.

8

Defendant did not try to minimize the possibility of violence, given that he failed to try to move Roberts or stop Ouellette from continuing to run over Roberts. Moreover, upon realizing that Roberts was trapped, instead of trying to help him, defendant kicked him and then remained in the truck as it dragged Roberts 730 feet. Further, defendant fled the scene when the truck stopped and did not provide any aid to Roberts.

The trial court noted defendant was only a few days short of turning 21 years old at the time of the crimes. However, defendant was "of the age where he should have known" the consequences of his actions, and whether he should be engaging in such actions. The evidence established that defendant was a major participant in the robbery and acted with reckless indifference to human life. As such, the court (1) found beyond a reasonable doubt that defendant remained guilty of murder and (2) denied defendant's section 1172.6 resentencing petition. Defendant timely appealed from the petition's denial.

## DISCUSSION

### I

### *Legal Background*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) amended the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2), and by amending section 189 to state that a person can be liable for felony murder only if: (1) the "person was the actual killer"; (2) the person, with an intent to kill, was an aider or abettor in the commission of murder in the first degree; or (3) the

9

"person was a major participant in the underlying felony and acted with reckless indifference to human life" (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3).

Where, like here, the trial court issues an order to show cause and holds an evidentiary hearing, the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder under California law as amended by the changes to section 188 or 189 made effective by Senate Bill No. 1437. (§ 1172.6, subd. (d)(3).) The parties may offer evidence from a prior trial, or new or additional evidence at the hearing. (*Ibid.*)

We review the denial of a section 1172.6 petition following an evidentiary hearing for substantial evidence. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125.) "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) We examine " 'the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657-658.) "We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Pham* (2009) 180 Cal.App.4th 919, 924-925.)

When "Senate Bill [No.] 1437 amended [section 189] to incorporate major participation and reckless indifference requirements, it codified the understanding of those requirements elucidated in *Banks* and *Clark*." (*People v. Strong* (2022) 13 Cal.5th 698, 710.) The major participation and reckless indifference requirements " 'often

10

overlap' " and cannot be uncoupled. (*Clark, supra*, 63 Cal.4th. at p. 615.) Generally, " 'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Ibid.*) Accordingly, evidence of major participation " 'often provide[s] significant support' " of reckless indifference.[2] (*Ibid.*)

As relevant here, our Supreme Court considered the reckless indifference element in *Clark*. (*Clark, supra*, 63 Cal.4th at pp. 614-623.) Reckless indifference to human life is " 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*Id.* at p. 616.) It "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Id.* at p. 617.) Recklessness has both a subjective and an objective component. Subjectively, the defendant must consciously disregard risks known to him. (*Ibid.*) Objectively, recklessness is determined by "what 'a law-abiding person would observe in the actor's situation,' " that is, whether the defendant's conduct " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Ibid.*) The fact that a robbery involved a gun or carried a risk of death is insufficient, by itself, to support a finding of reckless indifference. (*Id.* at pp. 617-618; see also *In re Scroggins* (2020) 9 Cal.5th 667, 677 [" 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life"].)

The *Clark* court identified various factors to be considered in determining whether the defendant acted with reckless indifference. (*Clark, supra*, 63 Cal.4th at pp. 618-623; see also *People v. Scroggins, supra*, 9 Cal.5th at p. 677 [courts must analyze the "totality

---

[2] As we discuss in more detail *post*, defendant does not challenge the sufficiency of the evidence supporting the major participant finding. Thus, we need not delve into the *Banks* decision in any detail, as that case outlined the relevant considerations for the major participant finding, which is uncontested here.

of the circumstances" when considering reckless indifference].) These include: "Did the defendant use or know that a [lethal weapon] would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risk of violence during the felony?" (*Scroggins,* at p. 677 [listing factors set forth in *Clark*, at pp. 618-623].) As courts have explained, youth may also be a relevant factor in considering reckless indifference. (*People v. Keel* (2022) 84 Cal.App.5th 546, 558-559.)

The *Clark* court found the evidence in that case was insufficient to show the defendant acted with reckless indifference to human life in the armed robbery of a computer store, where the defendant planned the robbery but was not armed or physically present in the store when the victim was shot, did not have the intent to kill, and attempted to minimize the likelihood of violence by timing the robbery for a time when fewer people would be present and using an unloaded gun. (*Clark, supra*, 63 Cal.4th at pp. 611, 613, 618-623.)

II

*Analysis*

Defendant argues the trial court erred in denying his resentencing petition because there was not substantial evidence to support the court's finding that he acted with reckless indifference to human life. We disagree.

We first note that defendant does not challenge the sufficiency of the evidence supporting the major participant finding; accordingly, we assume defendant was properly found a major participant for the purposes of the *Banks* court's discussion of the requirements of felony murder. We include a brief discussion of these uncontested findings, as they overlap with the findings supporting reckless indifference.

12

The trial court found that defendant was in a position to facilitate or prevent Roberts's death, as he had participated in the group assault that rendered Roberts unable to defend himself, and then entered the pickup truck as a passenger even though Roberts was positioned in the street in a manner that virtually ensured he would be run over. Defendant could have easily prevented the death by moving Roberts's body out of the truck's path but instead remained inside as the truck traveled 730 feet. After Roberts was run over and trapped, instead of offering aid or assistance, defendant kicked Roberts in an effort to dislodge him from the truck's wheel well so he and Ouellette could escape; when that did not work, he fled and left Roberts to die, which, per the pathologist, "took some time."

We agree that the evidence is sufficient to establish that defendant was personally present at the scene, participated in the group assault that rendered Roberts apparently unable to move or defend himself, left Roberts in a position and location highly vulnerable to further physical injury from the truck, again violently assaulted Roberts after he was lodged in the wheel well, and failed to render aid or seek assistance. Although such extensive (or "major") participation does not *necessarily* show reckless indifference, it does provide " 'significant support' " for the trial court's findings of reckless indifference. (*Clark, supra*, 63 Cal.4th. at p. 615 " 'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life' "].)

Turning to the *Clark* factors, we conclude the record contains sufficient evidence from which the trial court could conclude beyond a reasonable doubt that defendant acted with reckless indifference to Roberts's life.

As the trial court found, the second *Clark* factor (presence at the scene and opportunity to prevent or mitigate the crime or aid the victim) weighs heavily against defendant. (*Clark, supra*, 63 Cal.4th at pp. 619-620.) He was present and actively participated in the attack that left Roberts lying injured and helpless in the road. When

13

the attack ended, instead of moving Roberts to safety, defendant got into the pickup truck and left Roberts on the ground, where he likely would be in the truck's path when Ouellette drove away. After the truck backed up, defendant looked out of the truck (or got out and looked under the truck) in a manner that leads to the reasonable inference that he saw Roberts trapped in the wheel well. Instead of helping Roberts, he kicked Roberts in the head multiple times. He then stayed inside the truck as it drove slowly for 730 feet with Roberts trapped in the wheel well. Finally, he again failed to render aid or even call for help, and instead fled the scene, leaving Roberts to die.

Given that defendant did not try to move Roberts to safety or stop Ouellette from continuing his assault on Roberts with the truck, the final *Clark* factor--minimizing the risks of violence during the robbery--also weighs against defendant. (*Clark, supra*, 63 Cal.4th at pp. 621-622.) Moreover, once he realized Roberts was stuck in the wheel well, defendant kicked him rather than helping him.

Defendant's reliance on *Keel* and *People v. Ramirez* (2021) 71 Cal.App.5th 970 does not compel a different conclusion. "When we decide issues of sufficiency of the evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People v. Thomas* (1992) 2 Cal.4th 489, 516.) In *Keel*, on the day of the murder in 2005, the victim and a companion happened upon Keel and his accomplice and tried to buy drugs from them. Keel and his accomplice both brandished firearms (although Keel's was not loaded), told the victim's companion to walk away, and then demanded the victim empty his pockets. The victim resisted and was shot, with the ballistics evidence and some of the witnesses indicating the accomplice was the shooter. Keel testified he was shocked and surprised when his accomplice shot the victim. (*People v. Keel, supra*, 84 Cal.App.5th at pp. 550-554.) Keel was convicted of first degree murder, and the trial court denied his subsequent section 1172.6 resentencing petition. (*Keel*, at p. 550.) The appellate court reversed, finding insufficient evidence that Keel acted with reckless indifference to human life. (*Id.* at pp. 550-551, 556-557.)

14

The robbery was a crime of opportunity and the situation quickly escalated with the victim's unexpected resistance, leading the accomplice to " 'somewhat impulsive[ly]' " shoot the victim.  (*Id.* at p. 561.)  Moreover, Keel had arguably minimized the risk of violence by telling the victim's companion to leave the scene.  (*Id.* at p. 562.)

In *People v. Ramirez* (2021) 71 Cal.App.5th 970, the defendant was present during an attempted carjacking when his accomplice shot the victim, who drove away but later died.  Ramirez was convicted of murder, and the trial court denied his subsequent section 1172.6 resentencing petition.  The appellate court reversed, finding insufficient evidence Ramirez acted with reckless indifference to human life.  Although Ramirez had not taken any steps to reduce the risk of violence during the crimes, it was his accomplice who insisted on a carjacking and then escalated the situation by getting a firearm.  And, while Ramirez was present during the carjacking, the crimes happened very quickly, and Ramirez was not close enough to his accomplice to intervene once the accomplice started shooting.  (*Id.* at pp. 975-989.)  Under the circumstances, he had "no realistic opportunity to intervene before [his accomplice] opened fire," especially since the victim drove away after the shooting.  (*Ramirez,*. at pp. 989.)

Unlike in *Keel* and *Ramirez*, here, as we have described, defendant was very close by, continued to assault Roberts throughout the robbery and murder, and had numerous opportunities to mitigate the impacts of Ouellette's violence and offer aid.  Instead, he piled on, contributing to the escalating violence, and then fled the scene without calling for help, leaving Roberts to die.  The record is clear that defendant was an active participant in the series of crimes, from the assault and robbery to the victim's killing, from beginning to end, and took no action to mitigate any of the effects of these crimes.  This is evidence of reckless indifference to human life.  The record certainly contains sufficient evidence supporting that finding, under the applicable standard as we have outlined above.

15

The totality of the evidence and reasonable inferences therefrom support the trial court's finding that defendant was a major participant who acted with reckless indifference to human life.  Accordingly, we see no error in the petition's denial.

## DISPOSITION

The order denying the section 1172.6 petition is affirmed.


_____/s/_____
Duarte, Acting P. J.



We concur:



_____/s/_____
Krause, J.



_____/s/_____
Wiseman, J.*

---

*  Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16